UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JONATHAN DAVIS, | ) | CV F- 03-6093 AWI DLB P |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS RE |
| v. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| A. GALVAN, et al., | ) | [DOC #25] |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.   Procedural History

Plaintiff Jonathan Davis ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint filed August 13, 2003 against defendants Galvan and Langham.[1] Plaintiff alleges that defendant Galvan used a derogatory racial slur when addressing him. Plaintiff alleges that defendant Langham used excessive force on him when he struck him on the right knee with his baton and dragged him by his legs.

---

[1] Defendant Wilcox has never been served and does not bring the present motion for summary judgment.

On March 24, 2005, defendants Galvan and Langham ("defendants") filed a motion for summary judgment. Plaintiff has not filed an opposition to the motion or otherwise responded.

II.     Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56©, is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

1  U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630
2  (9th Cir. 1987), and that the dispute is
3  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
4  party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).
5       In the endeavor to establish the existence of a factual dispute, the opposing party need not
6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
8  trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the
9  pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
10 <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
11 amendments).
12      In resolving the summary judgment motion, the court examines the pleadings, depositions,
13 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56©.
14 The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable
15 inferences that may be drawn from the facts placed before the court must be drawn in favor of the
16 opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655
17 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing
18 party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v.</u>
19 <u>Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th
20 Cir. 1987).      Finally, to demonstrate a genuine issue, the opposing party "must do more than
21 simply show that there is some metaphysical doubt as to the material facts.  Where the record taken
22 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
23 issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).
24 ///
25
26
27
28

III.  <u>Undisputed Facts</u>[2]

**A.  Background**

1.  Plaintiff, Jonathon Davis (P-75771) was, at all times relevant to this action, was an inmate in the custody of the California Department of Corrections and housed at the California Correctional Institution (CCI) in Tehachapi.  Compl. p. 2.

2.  Defendant Galvan was a Correctional Lieutenant at CCI at all times relevant to this action. Compl. p. 2.

3.  Defendant Langham was a Correctional Sergeant at CCI at all times relevant to this action. Compl. p. 2.

**B.  April 18, 2002 Incident**

4.  On April 18, 2002, at approximately 6:00 p.m., Lieutenant Galvan and Sergeant Langham were supervising the evening meal in Dining Hall #2.  Plaintiff walked past Lieutenant Galvan with his pants sagging down around his buttocks.  Lieutenant Galvan stopped plaintiff and told him to pull up his pants.  Plaintiff turned and asked Lieutenant Galvan, "What did you say?"  Lieutenant Galvan responded, "Adjust you trousers for me please."  Defendants' Exhibit ("DX") A, CDC 837, Incident Report, pp. 12, 18-19, 24-25; DX B, Decl. of A. Galvan, ¶ 5.

5.  Plaintiff followed Lieutenant Galvan's orders and walked away to his seat in the dining room. A short time later, plaintiff approached Lieutenant Galvan and asked why he called plaintiff a "Nigger."  Lieutenant Galvan told plaintiff he did not use that term and that he had instructed plaintiff to adjust his trousers.

6.  Plaintiff refused to accept Lieutenant Galvan's response and Galvan alleges plaintiff became

---

[2] Plaintiff neither admitted or denied the facts set forth by defendants as undisputed nor filed a separate statement of disputed facts.  Local Rule 56-260(b).  Therefore, the court compiled the statement of undisputed facts from defendants' statement of undisputed facts and plaintiff's verified complaint.  <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge).  Because plaintiff neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the court accepts defendants' version of the facts where plaintiff's verified complaint is not contradictory.

became argumentative. During the conversation, Sergeant Langham and Lieutenant Galvan noticed that plaintiff smelled of alcohol. DX A, pp. 18-19, 24-25; DX B, ¶ 5.

7. Plaintiff then stated to Sergeant Langham, "You were there, you heard what he said." Sergeant Langham denied hearing anything and then ordered plaintiff to step out of the dining hall and plaintiff complied. DX A, pp. 18-19, 24-25; DX B, ¶ 6, DX C, Decl. of J. Langham, ¶ 6. Defendants assert that the reason for removing plaintiff from the dining hall was that plaintiff was becoming argumentative. DX B, ¶ 6.

8. It then became a security issue and in order to prevent the situation from escalating and disrupting the evening meal, plaintiff was ordered out of the dining hall. Lieutenant Galvan remained in the dining hall supervising the evening meal. DX B, ¶ 6.

9. Sergeant Langham and Officer Wilcox then escorted plaintiff out of the dining hall for the purpose of conducting a clothed body search. DX A, pp. 18-19, 24-25, 39-40. The reason for the clothed body search was to locate an identification card and the possible presence of dangerous contraband prior to counseling plaintiff about his disruptive behavior. DX B, ¶ 7.

10. As Sergeant Langham and Officer Wilcox initiated the clothed body search, Lieutenant Galvan opened the exit door of the dining hall and instructed Sergeant Langham to have plaintiff handcuffed and escorted to the clinic holding cell at the completion of the clothed body search. DX A, pp. 18-19; 24-25; DX B, ¶ 8, DX C, ¶ 7. The reason for escorting plaintiff to the clinic holding cell was to have plaintiff readily available for a sobriety evaluation by medical staff. This would also give plaintiff the opportunity to cool down while they concluded the evening meal. DX B, ¶ 8.

11. Officer Wilcox proceeded to conduct the clothed body search while Sergeant Langham acted as a cover for the search. While being searched, plaintiff turned to his right and lowered his right arm. Officer Wilcox stepped back and told plaintiff to turn away and not to do that again. Plaintiff responded, "this shit ain't right." Sergeant Langham told plaintiff that he was going to be handcuffed and taken to the clinic holding. Plaintiff tuned again to his right and lowered his right arm. Officer Wilcox stepped back and with his hands guided plaintiff's

|     |     |     |
| --- | --- | --- |
| 1   |     | arms back towards the wall. DX A, pp. 24-28, 39-40; DX C, ¶ 8. |
| 2   | 12. | Sergeant Langham instinctively removed his baton from its ring, then held it in the basic position in his right hand. Sergeant Langham ordered plaintiff not to turn around again and to allow Officer Wilcox to finish the search. Plaintiff lowered his head and in a swift motion spun to his right. DX A, pp 24-28, 39-40; DX C, ¶ 8. |
| 6   | 13. | Sergeant Langham responded by utilizing a forward power spin, striking plaintiff one time on his right lower thigh with the long extended portion of the baton. Officer Wilcox took plaintiff to the ground using physical strength and holds. Sergeant Langham placed his baton back in the ring and handcuffed plaintiff. Officer Wilcox and Sergeant Langham assisted plaintiff back to his feet. Officer Wilcox and Officer Hughes took plaintiff to the clinic holding. DX A, pp. 24-28; 36-37, 39-40; DX C, ¶ 9. |
| 12  | 14. | Lieutenant Galvan responded to the announcement which came over the radio identifying a scuffle outside the dining hall. As he responded and exited the dining hall, he observed Sergeant Langham and Officer Wilcox placing plaintiff in handcuffs on the ground. Defendant Galvan was not present, nor did he witness the scuffle. DX B, ¶¶ 9-10. |

**C.   Medical Evaluation of Plaintiff by MTA Ortiz**

15. Plaintiff was escorted to the clinic, and at approximately 6:02 p.m., Medical Technical Assistant (MTA) Ortiz evaluated plaintiff and completed a CDC 7219, Medical Report of Injury or Unusual Occurrence. DX D, Decl. M. Ortiz, ¶ 5.

16. Plaintiff's statement to MTA Ortiz was, "The Lieutenant called me a 'Nigger'." Plaintiff did not state that he was assaulted by staff, or make any other statements. DX D, ¶ 6.

17. On the CDC 7219, MTA Ortiz noted that plaintiff was alert and oriented as to time, place, and person; had a superficial abrasion to the right knee and left eye; and had no signs or symptoms of pain or distress. MTA Ortiz also noted that a positive sobriety report was on file. Plaintiff was released and returned to custody. DX D, ¶¶ 6-7.

18. MTA Ortiz performed a sobriety evaluation on plaintiff that same evening. On the sobriety report, MTA Ortiz noted that plaintiff's eyes were bloodshot, his gait abnormally weaved, he

was overly talkative, and his breath smelled of alcohol. MTA Ortiz concluded that plaintiff was intoxicated. DX D, ¶ 8.

19. There was no indication that plaintiff had been assaulted by staff on April 18, 2002. Plaintiff did not make any statements to that effect and his injuries did not indicate that he had been the victim of an assault. DX D, ¶ 9.

**D. CDC 115, Rules Violation Report**

20. On April 23, 2002, plaintiff was issued a CDC 115, Rules Violation Report charging him with "Attempted Battery on a Peace Officer." The CDC 115 was based on the incident of April 18, 2002. DX A, pp 3-8.

21. On April 27, 2002, plaintiff made the following statement to the Investigative Employee: "The only reason I was hit was because I came off the wall. I don't know where they get that it was attempted battery." DX A, p. 4.

22. On May 9, 2002, plaintiff appeared before the Senior Hearing Officer (SHO) for a disciplinary hearing on this matter. During the hearing, the SHO asked plaintiff, "Were you intoxicated during this incident?" Plaintiff's answer was, "Yes." DX A, p.6.

23. Plaintiff was found guilty of the charge. DX A, p. 6.

IV. <u>Discussion</u>

    A.    <u>Use of Racial Slur</u>

Plaintiff alleges that defendant Galvan used a racial slur when addressing him in the dining hall on April 18, 2002. Defendant Galvan denies using a racial slur when addressing plaintiff.

Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987). Accordingly, even if defendant Galvan used a racial slur, this claim fails and Galvan is entitled to judgment as a matter of law.

    B..    <u>Excessive Force Claim</u>

Plaintiff alleges that defendant Langham used excessive during the April 18, 2002 incident. "Whenever prison officials stand accused of using excessive physical force in violation of the

Cruel and Unusual Punishment Clause [of the Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7. The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action. Id. at 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) (cert. denied sub nom. Johnson, 414 U.S. 1033 (1973)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10.

Defendants argue that the April 18, 2002 incident began because plaintiff was agitated and argumentative with Lieutenant Galvan and Sergeant Langham due his belief that Galvan had used a racial slur. UF 5, 6. Plaintiff was ordered to exit the dining room because he was becoming disruptive. UF 7. Plaintiff smelled of alcohol and in fact was intoxicated. US 6, 19. Defendants also point out that plaintiff was uncooperative during a clothed body search. On two occasions while Officer Wilcox was performing the search, plaintiff took his hands off the wall and turned toward the officers. Plaintiff was ordered to turn around and submit to the search on both occasions. When plaintiff turned toward the officers, Sergeant Langham believed plaintiff was about to attack Officer Wilcox and himself. Langham therefore responded by striking plaintiff on his right lower thigh with the baton.

In his complaint, with respect to defendant Langham's actions, plaintiff alleges that while

defendant Wilcox was conducting the pat down search, he struck plaintiff in the groin area in an "upward thrust" which caused plaintiff to remove his hands from the wall and yell out in pain.  After he placed his hands back on the wall as ordered, plaintiff alleges that defendant Wilcox struck him a second time in the groin area using the same upward thrusting motion.  This time plaintiff alleges that he removed his hands from the wall and turned around to face defendants Wilcox and Langham and was immediately struck witht he baton by defendant Langham.

It is undisputed that while being searched, plaintiff took his hands off the wall and turned toward Wilcox and Langham after being told to keep his hands on the wall.  Plaintiff does not dispute that he was intoxicated or insubordinate.  Instead, he claims he turned toward the officers because he thought they were attacking him.  By necessity, insubordination is a matter taken very seriously within the confines of an institutional setting.  Plaintiff's refusal to comply with direct orders and his physical movement toward the officers created a need for the application of force to restore order and gain plaintiff's compliance.  While the facts leading up to plaintiff's turning toward the officers is disputed, the force at issue was employed for the very purpose of gaining plaintiff's compliance with the order.  When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff.  Under these circumstances, defendant Langham could reasonably have perceived plaintiff's disobedience to be a threat requiring the use of force.  Defendant Langham's use of the baton to strike plaintiff in the thigh, under these circumstances, was not the sort of force "repugnant to the conscience of mankind" as required to prevail on an Eighth Amendment claim.  Viewing the evidence in the light most favorable to plaintiff, the allegations simply do not support a claim for relief under section 1983 for use of excessive physical force.  The Court finds that the force applied by defendant was "a good-faith effort to maintain or restore discipline," and was not applied "maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 7, and that defendant Langham is entitled to judgment as a matter of law on plaintiff's excessive force claim.

E.     Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for

summary judgment be GRANTED, thus concluding this action in its entirety, and judgment be entered for defendants and against plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   November 28, 2005                    /s/ Dennis L. Beck
3b142a                                         UNITED STATES MAGISTRATE JUDGE